UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SUSAN F. MCLAUGHLIN,

                **Plaintiff,**

  -against-                                  06-CV-00376

PETER F. PEZZOLLA, in his individual capacity, *et al.*,

                **Defendants.**

_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I. INTRODUCTION**

On March 23, 2006, Plaintiff Susan F. McLaughlin commenced this action for declaratory and injunctive relief and damages pursuant to 42 U.S.C. § 1983, Article I, § 8 of the New York State Constitution, and New York Labor Law § 741 asserting retaliation in violation of her First Amendment rights and her rights under the New York State Constitution and the Labor Law. See Compl., dkt. # 1. Plaintiff filed an Amended Complaint on May 29, 2006. See Am. Compl., dkt. # 14. Thereafter, certain defendants were dismissed from the action by stipulation. See dkt. # 37 (Stipulation and Order dismissing all claims against Doris Chenier); dkt. # 45 (Stipulation and Order dismissing all claims against the New York State Public Employees Federation AFL-CIO and Edward J.

Snow, Jr.).  Defendants Peter F. Pezzolla, Joseph J. Colarusso, Antonia J. Ferguson, Ann T. Nehrbauer, Victor M. Turner, Kathleen Broderick, Laura McGrath, Rita Martin, the NYS Office of Mental Retardation and Developmental Disabilities ("OMRDD") and the Willowbrook Consumer Advisory Board ("CAB") have filed a motion asking the Court to: (a) dismiss Plaintiff's federal claims pursuant to Fed. R. Civ. P. 12(b)(6);  and (b) decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  Plaintiff opposes the motion and cross-moves for an order granting her leave to file and serve a Second Amended Complaint.  Defendants have opposed the cross-motion and contend, even if the complaint is amended a second time, Plaintiff fails to state a federal claim upon which relief can be granted.

## II.  STANDARDS OF REVIEW

### a.  Motion to Dismiss Under Rule 12(b)(6)

A motion under  Fed.  R.  Civ.  P.  12(b)(6) tests the legal sufficiency of the claims pleaded in the complaint.  As the Supreme Court has held, "a complaint must only include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)(quoting Fed.  R.  Civ.  P. 8(a)). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  "This simplified notice pleading relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  Id.  Thus, a complaint is sufficient if it gives the defendant fair notice of the plaintiff's claims, the grounds upon which they rest, and states claims upon which relief

could be granted. Id. at 514.

On a Rule 12(b)(6) motion, the Court accepts as true all factual allegations in the complaint. See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). "Further, the court should construe the complaint liberally and draw inferences from the plaintiff's allegations in the light most favorable to the plaintiff." Tomayo v. City of N.Y., 2004 WL 137198, at * 5 (S.D.N.Y. Jan. 27, 2004)(citing Desiderio v. National Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999)). The complaint must allege sufficient facts that would make the pleaded theories plausible. See Twombly v. Bell Atlantic Corp., 425 F.3d 99, 111 (2d Cir. 2005). Dismissal is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," Phillip v. Univ. of Rochester, 316 F.3d 291, 293 (2d Cir. 2003)(citation omitted), or where the complaint fails as a matter of law. Phelps v. Kapnolas, 308 F.3d 180, 187 (2d Cir. 2002).

### b.  Amendment of Complaint Under Rule 15(a)

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires."  Leave is not, however, automatic, and may be denied for good cause "such as . . . bad faith or dilatory motive on the part of the movant . . . [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).  "An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis." Lamb v. Henderson, 1999 WL 516271, at *2 (S.D.N.Y. Aug. 9, 1999)(citing S.S. Silberblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28, 42 (2d Cir. 1979)).  A court, therefore, is justified in denying an

3

amendment that could not withstand a motion to dismiss. Id. (internal citations omitted); see also Ruffolo v. Openheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)(where granting leave to amend is unlikely to be productive it is not an abuse of discretion to deny leave to amend).

### III. BACKGROUND

The following facts are those set forth in the Amended Complaint ("Am. Compl")[1] or constitute reasonable inferences that may be drawn from Plaintiff's allegations. Plaintiff Susan F. McLaughlin was employed by the State of New York for 35 years. Am. Compl. ¶ 17. In March 1989, Plaintiff was appointed to a position as a Program Associate with the Willowbrook Consumer Advisory Board ("CAB"). Am. Compl. ¶ 18. The CAB was established pursuant to provisions set forth by the United States District Court for the Eastern District of New York in New York State Association for Retarded Children, et al., v. Hugh L. Carey, et al., 393 F. Supp. 715 (E.D.N.Y. 1975). Am. Compl. ¶ 20. In that action, the New York Civil Liberties Union ("NYCLU") represented the developmentally disabled individuals who resided at the Willowbrook State School prior to 1972 and who had been subjected to abuse and neglect while there. The New York State Office of Mental Retardation and Developmental Disabilities ("OMRDD") was one of the defendants in that action.

---

[1] In her opposition to Defendants' motion to dismiss, Plaintiff addresses her argument primarily to the facts contained in the Amended Complaint. As discussed in the text, Plaintiff seeks to amend the Amended Complaint to add factual allegations that would tend to indicate that her speech concerned matters outside the course of her official duties with her former public employer, and to delete allegations that would tend to indicate that her speech was limited to matters within the course of her official duties. Since Plaintiff addresses her opposition to the motion to dismiss to the allegations contained in the Amended Complaint, the Court has set forth the facts alleged in the Amended Complaint and, where pertinent to the cross-motion, provided a footnote noting the changes in the proposed Second Amended Complaint (2nd Am. Compl.).

By a Permanent Injunction entered March 11, 1993, the United States District Court for the Eastern District of New York noted that "in order to prevent the recurrence of the tragic conditions which led to the filing of this litigation in 1972 and the entry of the Consent Judgment in 1975, both plaintiffs and defendants agree that the members of the plaintiff class must continue to receive high quality services in appropriate community settings for the rest of their lives . . . ." Am. Compl. ¶ 22. The CAB was established by the Federal court essentially to be an independent "watchdog" over OMRDD's provision of services to members of the Willowbrook Class. See Am. Compl ¶¶ 20 - 23. In her position as a Program Associate for CAB, Plaintiff was responsible for representing between 87 and 125 members of the Willowbrook Class. Am. Compl. ¶ 26. These developmentally disabled individuals, referred to as consumers, resided in facilities in upstate New York and did not have family members or other individuals to make decisions on their behalf. Am. Compl. ¶¶ 20, 26. Plaintiff's job duties included attending treatment team meetings, conducting site visits, providing or withholding Informed Consent as required by regulations, interacting with service providers on behalf of the consumers assigned to her caseload, and reporting individual or systemic issues to the CAB hierarchy. Am. Compl. at ¶ 27.

Plaintiff was a vigorous advocate for the consumers assigned to her caseload. Am. Compl. ¶ 29. During the period 1989-2005, Plaintiff reported numerous instances of abuse and neglect and of the failure to provide proper services to the consumers assigned to her caseload. Am. Compl. ¶¶ 29 -50. Despite receiving these detailed verbal and written reports, Defendant CAB failed to take any action to protect the consumers and/or to otherwise properly respond to Plaintiff's reports. Am. Compl. ¶¶ 29-50, 60-61, 85-87,

102-104. Because the CAB had failed to act on or otherwise address any of Plaintiff's reports, in January 2003 Plaintiff wrote three letters to Beth Haroules, Esq., a staff attorney at the NYCLU, detailing the failures to provide prompt diagnosis and adequate treatment to two individuals assigned to Plaintiff's caseload who were suffering from cancer. Am. Compl. ¶¶ 53-55. Ms. Haroules did not respond to Plaintiff's letters. Am. Compl. ¶¶ 53-55. Ms. Haroules was not affiliated with CAB and was not in any way in Plaintiff's supervisory chain of command. Am. Compl. ¶¶ 53-55. Plaintiff continued to make reports regarding the mistreatment of the consumers assigned to her caseload. The CAB again failed to respond to any of Plaintiff's reports and failed to take any other action in response to them. Am. Compl. ¶¶ 60-61.

> By letter dated February 20, 2004, plaintiff wrote to defendant Nehrbauer and Commissioner Maul to report specific cases of neglect and abuse of consumers assigned to her caseload "resulting in illness, injury, and/or death of people with developmental disabilities in the care of OMRDD." In the letter, plaintiff stated that "situations about which I have repeatedly expressed concern involve abusive or neglectful acts and systemic cover-up. There are indications that some of the cases also involve Medicaid fraud."

Am. Compl. ¶ 64.[2] Defendant Ann Nehrbauer was the Chair of the CAB, and Thomas Maul was the OMRDD Commissioner.[3] Defendant Nehrbauer sent a letter of acknowledgment to Plaintiff, but otherwise failed to take any action on it. Am. Compl. at ¶

---

[2] This paragraph is amended in the proposed Second Amended Complaint to add the allegation that Plaintiff wrote the letter during non-working hours on her personal letterhead and affixed with postage that she paid for herself, and to delete the allegation that the letter concerned "consumers assigned to her caseload." 2nd Am. Compl. ¶ 59.

[3] Plaintiff contends on the instant motions that she was not required to report to anyone in OMRDD in her official position as a CAB Program Associate.

66.[4]  OMRDD Counsel Paul Keitzman replied to Plaintiff on behalf of OMRDD Commissioner Maul by means of a letter. Am. Compl. ¶ 67.[5] In this letter, Keitzman told Plaintiff to share her concerns with Daniel Reardon, the Director of Internal Affairs for OMRDD. Am. Compl. at ¶ 67.  Plaintiff wrote to Director Reardon by letter dated March 12, 2004 and requested an investigation into the mistreatment of a number of consumers assigned to her caseload. Am. Compl. at ¶ 70.

> Plaintiff subsequently met with Reardon on June 4, 2004 and provided him with more than 700 pages of documents concerning Consumer B's treatment. At the meeting, plaintiff also discussed five other cases with Reardon and attempted to report an additional fifteen cases. Reardon assured plaintiff that he would review the files provided by plaintiff and that he would contact her for follow up questions and additional information.

Am. Compl. ¶ 79.[6]

Almost immediately after Plaintiff wrote to Commissioner Maul, OMRDD staff members began to generate and collect complaints about Plaintiff's alleged workplace conduct. Am. Compl. ¶ 69. These complaints included a letter from Edward Snow, a field representative for the NYS Public Employee's Federation ("PEF"), to Defendant Joseph

---

[4] Plaintiff alleges in the proposed Second Amended Complaint that Defendant Nehrbauer sent this letter of acknowledgment to Plaintiff at her home address. 2nd Am. Compl. ¶ 60.

[5] Plaintiff alleges in the proposed Second Amended Complaint that OMRDD Counsel Paul Keitzman sent this letter to Plaintiff at her home address. 2nd Am. Compl. ¶ 61.

[6] "Consumer B" was a consumer assigned to Plaintiff's caseload. See Am. Compl. ¶ 43.

In the proposed Second Amended Complaint, Plaintiff amends this paragraph to add the allegation that, during the June 4, 2004 meeting, she attempted to report fifteen additional cases of consumers "many of whom were individuals not assigned to plaintiff's caseload and some of whom were not members of the Willowbrook Class." 2nd Am. Compl. ¶ 73

Plaintiff argues on the current motion that the June 4, 2004 meeting with Director Reardon, Plaintiff reported her belief that there was a conspiracy between the CAB and OMRDD to allow and cover-up the abuse and neglect of developmentally disabled people living in New York State, including but not limited to medical experimentation on and the avoidable deaths of certain individuals.  Those specific allegations, however, are not in the Amended Complaint or the Second Amended Complaint.

Colarusso, a Director for OMRDD who did not supervise or otherwise have authority over Plaintiff, claiming that Plaintiff created a "hostile and threatening" work environment for employees who had "professional opinions differing from that of" Plaintiff. Am. Compl. ¶ 76. Further, on or about November 29, 2004, Edward Snow filed an alleged grievance for anonymous "affected members" of PEF in which Snow falsely alleged that Plaintiff had been rude and unprofessional to those members. Am. Compl. at ¶ 88.

By memorandum dated December 7, 2004, Defendants Pezzolla and Broderick, both OMRDD Assistant Commissioners, informed Defendant Ferguson, the CAB Executive Director, that Plaintiff was being placed on administrative leave as a result of an allegation that Plaintiff had neglected consumers and/or jeopardized their health and safety. Am. Compl. ¶ 95.[7] However, Plaintiff was not placed on administrative leave. Instead, on January 4, 2005, Defendant Turner, Assistant Director for the CAB, advised Plaintiff that more than half of the consumers for whom she had previously had advocacy responsibility were being reassigned to Turner "as a protection to plaintiff." Am. Compl. ¶ 97.

By letter dated February 17, 2005, Plaintiff informed OMRDD Commissioner Maul and Defendant CAB Chair Nehrbauer that OMRDD Director Reardon had failed to investigate Plaintiff's allegations of abuse and neglect and the avoidable deaths of certain individuals, and that these problems were continuing. Am. Compl. ¶ 99.[8] Neither

---

[7] Plaintiff alleges in the proposed Second Amended Complaint that this memorandum was also sent to Beth Haroules of the NYCLU. See 2nd Am. Compl. ¶ 88.

[8] Plaintiff alleges in the proposed Second Amended Complaint that this letter was written by Plaintiff during non-working hours on Plaintiff's personal letterhead from her home address and affixed with postage posted paid for by Plaintiff. 2nd Am. Compl. ¶ 90.

Commissioner Maul nor Defendant Nehrbauer responded to Plaintiff's letter.  Am. Compl. ¶ 100.

On May 27, 2005, without explanation, Defendant Ferguson placed Plaintiff on administrative leave effective June 1, 2005.  Am. Compl.  ¶ 105.  On June 22, 2005, Plaintiff was interrogated by OMRDD Director Reardon and an Assistant Director of CAB.  Am. Compl ¶ 107. Plaintiff was not informed of the nature of her alleged wrongdoing nor of the charges against her. Am. Compl ¶ 107.   By letter dated July 22, 2005,  Defendant Ferguson, without explanation, informed Plaintiff that her 35 year career with New York State would be terminated effective July 27, 2005.  Am. Compl ¶ 108.

Plaintiff asserts:

Upon information and belief, plaintiff's speech concerning the care and treatment of consumers assigned to plaintiff's caseload and the misuse of federal funds, which addressed matters of public concern, was a substantial and/or motivating factor in the termination of plaintiff's employment.

Am. Compl. ¶ 109.[9]

Further, as to her allegations of First Amendment retaliation, Plaintiff alleges in the Amended Complaint as to each defendant:

By the actions alleged herein, defendant [] retaliated against plaintiff for her protected speech that addressed matters of public concern and was necessary for plaintiff to properly and faithfully carry out her duties and responsibilities as a CAB Program Associate to protect the rights of the consumers assigned to her caseload. Defendant [] thereby violated plaintiff's right to freedom of speech guaranteed by the First Amendment to the United

---

[9] In the proposed Second Amended Complaint, this paragraph is amended to read:

Upon information and belief, plaintiff's statements to NYCLU Staff Attorney Haroules, OMRDD Commissioner Maul and OMRDD Director Reardon, were the substantial and/or motivating factors in the termination of plaintiff's employment.

2nd Am. Compl. ¶ 98.

States Constitution.

Am. Compl. ¶¶ 112, 118, 124, 130, 136, 142, 148, 154, 159, 164, 170, 176.[10]

## III. DISCUSSION

### a. Rules 12(b)(6) and 15

The success of the two pending motions - Defendants' motion to dismiss Plaintiff's First Amendment retaliation claims and Plaintiff's cross-motion for leave to amend the complaint a second time - turn on an application of Garcetti v. Ceballos, --- U.S. ----, ----, 126 S.Ct. 1951 (2006). Garcetti, decided by the United States Supreme Court on May 30, 2006, constituted a refinement of First Amendment jurisprudence in the context of actions, like the instant one, that involved First Amendment workplace retaliation claims by public employees. Id. Simply stated, the Supreme Court held in Garcetti that the First Amendment does not protect statements by public employees on matters of public concern if those statements were made pursuant to the public employee's official duties. Id. at 1960 ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.").

The issue on the instant motions is whether Plaintiff spoke "as a citizen," or whether

---

[10]Each of the cited paragraphs are identical with the exception that each contains the name of a different defendant in the brackets. Each of these paragraphs are amended in the proposed Second Amended Complaint to read:

> By the actions alleged herein, defendant [] retaliated against plaintiff for her protected speech that addressed matters of public concern. Defendant [] thereby violated plaintiff's right to freedom of speech guaranteed by the First Amendment to the United States Constitution.

2nd Am. Compl. ¶¶ 101, 107, 113, 119, 125, 131, 137, 143, 148, 153. Thus, with regard to Plaintiff's First Amendment retaliation claims, the proposed Second Amended Complaint takes out the phrase "and was necessary for plaintiff to properly and faithfully carry out her duties and responsibilities as a CAB Program Associate to protect the rights of the consumers assigned to her caseload."

she made statements pursuant to her official duties.[11]  Defendants assert that it is the latter.  In this regard, Defendants point out that Plaintiff's Amended Complaint cast her speech as "job related" and made pursuant to her duties as a CAB Program Associate which required her to be a "vigorous advocate" for her consumers and report "systemic issues."  See Def. Mem. L. pp. 2-3;  Def. Reply Mem. L. p. 1 (citing, *inter alia*, Am. Compl. ¶¶ 27, 29, 73).   Defendants  further argue that Plaintiff's motion for leave to amend should be denied because: (1) Plaintiff asserts untrue factual allegations in the proposed Second Amended Complaint in an attempt to escape the reaches of Garcetti.  See Def. Reply Mem. L.  p. 1 ("Although defendants note that Fed. R. Civ. P. 15(a) provides that 'leave shall be freely given when justice so requires,' . . .  'justice' is not served by essentially permitting plaintiff to perpetrate an untruth upon the court.");  and (2) amendment would be futile because, even accepting as true the allegations in the proposed Second Amended Complaint, Plaintiff's speech was pursuant to and within the scope or her official duties.  Id. p. 2.

Plaintiff counters by arguing that factual allegations in the Amended Complaint support a viable First Amendment retaliation claim even under Garcetti, and by moving to amend to assert factual allegations concerning speech on subjects purportedly beyond Plaintiff's official duties.  As to the contention that the allegations in the Amended

---

[11]Defendants have not contended on this motion that Plaintiff's speech was not on a matter of public concern, see Connick v. Myers, 461 U.S. 138, 146 (1983)(Speech by a public employee is on a matter of public concern, and protected by the First Amendment, if it relates "to any matter of political, social, or other concern to the community."), or that she otherwise failed to establish the other necessary elements of a First Amendment retaliation claim. See Skehan v. Village of Mamaroneck, 465 F.3d 96, 106 (2d Cir. 2006)(In order to for a plaintiff to establish a First Amendment retaliation claim, the plaintiff must prove that: (1) she engaged in constitutionally protected speech because she spoke as a citizen on a matter of public concern; (2) she suffered an adverse employment action; and (3) the speech was a motivating factor in the adverse employment decision.).

11

Complaint support a viable First Amendment claim even under Garcetti, Plaintiff asserts that she:

> has alleged in the [Amended] Complaint a number of statements that plainly were not a part of her official duties. For example, at Paragraph 54 of the Complaint, plaintiff alleges that she sent three letters to Beth Haroules, Esq., a staff attorney at the NYCLU, regarding the failure of service providers to provide two consumers with appropriate cancer diagnoses and treatment.[12] It is indisputable that plaintiff did not report to or otherwise have any official duties or responsibilities with respect to Ms. Haroules or the NYCLU.
>
> Similarly, at Paragraph 62[13] of the Complaint, plaintiff alleges that she wrote to OMRDD Commissioner Thomas Maul and CAB Board Chair Ann Nehrbauer to notify them that she possessed evidence of abuse and neglect of consumers and of Medicaid fraud. Plaintiff did not report to or otherwise have any official duties and responsibilities with respect to OMRDD or Commissioner Maul. Plaintiff's statements to him and his designees therefore are entitled to First Amendment protection.
>
> The Complaint also alleges at Paragraph 67 that Commissioner Maul, through his Counsel, told plaintiff to communicate with Daniel Reardon, Director of Internal Affairs for OMRDD, to reveal the evidence she possessed.[14] It was not a part of plaintiff's official duties to report abuse and neglect of consumers and/or Medicaid fraud to Director Reardon. Nonetheless, plaintiff wrote to, spoke with and ultimately met with Reardon and provided him with documents and information to support her allegations of conspiracy and cover-up regarding these matters of serious public concern. Thus, plaintiff's communications with Director Reardon also are entitled to First Amendment protection.
>
> Finally, as stated at Paragraph 94 of the Complaint, by letter dated February 17, 2005, plaintiff informed Commissioner Maul and Ms. Nehrbauer that Director Reardon had failed to investigate her allegations of consumer abuse and neglect. Plaintiff further informed them that the problems were continuing. This time, neither Commissioner Maul (either by himself or through a designee) nor Ms. Nehrbauer responded to plaintiff's letter. However, because plaintiff's statements in that letter were not made as a

---

[12]This allegation is re-alleged at paragraph 51 of the proposed Second Amended Complaint.

[13]This allegation is contained at paragraph 64 of the Amended Complaint, not paragraph 62, and is re-alleged at paragraph 59 of the proposed Second Amended Complaint.

[14]This allegation is re-alleged at paragraph 61 of the proposed Second Amended Complaint.

12

>part of her official duties, those statements also are entitled to First
>Amendment protection.

Plt. Mem. L. pp 14-15.

The fact that some of these matters may have been "job related" does not mean, *a fortiori*, that her claim is barred under Garcetti. Indeed, in addressing the subject speech in Garcetti, a memorandum written by a deputy district attorney to his supervisor recommending that a case be dismissed on the basis of alleged governmental misconduct in obtaining a search warrant, see Garcetti, 126 S. Ct. at 1955-57, the Court noted that

>[t]he memo concerned the subject matter of [the deputy district attorney's] employment, but this, too, is nondispositive. The First Amendment protects some expressions related to the speaker's job. See, e.g., [Pickering v. Bd. of Educ., 391 U.S. 563, 573 (1968)]; [Givhan v. Western Line Consol. School Dist., 439 U.S. 410, 414 (1979)]. As the Court noted in Pickering: "Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal." 391 U.S., at 572, 88 S.Ct. 1731. The same is true of many other categories of public employees.

Garcetti, 126 S. Ct. at 1959.

More troubling, however, are the allegations contained in each of Plaintiff's First Amendment retaliation claims in the Amended Complaint that Defendants retaliated against her "for her protected speech that addressed matters of public concern *and* was necessary for plaintiff to properly and faithfully carry out her duties and responsibilities as a CAB Program Associate to protect the rights of the consumers assigned to her caseload." Am. Compl. ¶¶ 112, 118, 124, 130, 136, 142, 148, 154, 159, 164, 170, 176 (emphasis added). By the use of the conjunctive in this sentence, the Court is left with the unmistakable impression that Plaintiff is contending that Defendants retaliated against her

13

because of speech she made pursuant to her official duties - the type of speech that the Supreme Court in Garcetti expressly deemed was *not* protected by the First Amendment. See Garcetti, 126 S.Ct. at 1960.

      Clearly, the sought-after amendment is intended to, *inter alia*, remove what would otherwise be fatal language tying the adverse employment action to speech within the scope of Plaintiff's duties. See fn. 10, supra. In this regard, Plaintiff appears to be seeking to amend her complaint to change the theory of her case, alleging now that the retaliation was for speech which concerned matters *outside* the scope of her official responsibilities. Id. New claims may properly be added by amendment, see Seneca Ins. Co. v. Wilcock, 2007 WL 415141, at * 2 (S.D.N.Y. Feb. 5, 2007)("Under Rule 15 the court retains broad discretion in assessing motions to amend pleadings, including applications to assert new claims.")(citing Northern Assur. Co. of America v. Square D Co., 201 F.3d 84, 87 (2d Cir. 2000); Hillburn v. Maher, 795 F.2d 252, 264 (2d Cir. 1986)), and when, as is the situation here, the factual underpinnings of the newly asserted theory arguably exist on the face of the current pleading, amendment should be allowed. See Foman v. Davis, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").

      Defendants contend that amendment should not be allowed because Plaintiff asserts "untrue" factual allegations in an attempt to escape the reaches of Garcetti. Defendants have not identified what proposed additions constitute these untruths. While the proposed Second Amended Complaint does contain some additional factual

14

allegations not contained in the Amended Complaint, see e.g. fns. 2-4, 6-8, supra, these allegations are not negated by the allegations in the prior pleading but rather seem to be merely additional factual allegations tending to support the legal sufficiency of Plaintiff's First Amendment claims. Id.  Further, the Court presumes that, in accordance with the requirements of Fed. R. Civ. P. 11, the new factual allegations are presented in good faith. Thus, in this regard the Court does not find that the amendment is sought in bad faith or for dilatory motive.

As to Defendants' contention that the First Amendment claims are barred by Garcetti even if amendment is allowed, Plaintiff argues that the true scope of her official duties cannot be ascertained from the face of her pleadings.  Plaintiff contends that her speech concerned matters outside the scope of her duties and, therefore, the case cannot be dismissed at this stage of the proceedings.  These points set this matter apart from Garcetti.  In Garcetti, it was undisputed that the subject speech - the memorandum by the deputy district attorney to his supervisor -  was drafted pursuant to the deputy district attorney's official duties. See Garcetti, 126 S.Ct. at 1961  ("[T]he parties in this case do not dispute that [the deputy district attorney] wrote his disposition memo pursuant to his employment duties."). The Court found this undisputed fact to be the "controlling factor" of the decision, Garcetti, at 1959-60, and, consequently, found no reason "to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." Id., at 1961.  In so holding, the Court  rejected

> the suggestion that employers can restrict employees' rights by creating excessively broad job descriptions. See post, at 1965, n. 2 (Souter, J., dissenting).   The proper inquiry is a practical one.  Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job

15

> description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

Garcetti, 126 S.Ct. at 1961-62 .

Inasmuch as Plaintiff contends that the subject speech concerned matters beyond the scope of her official duties, a factual issue exists that was not presented in Garcetti. This, in turn, requires a practical inquiry. Id. Although the Amended Complaint and the proposed Second Amended Complaint both contain allegations that *might* indicate that Plaintiff's job duties required her to advocate for individuals beyond her caseload of Willobrook Class members and that the subject speech was one and the same with her advocacy duties as a Program Associate with the CAB, that conclusion cannot be drawn from the face of the pleadings. Accepting as true the allegations that Plaintiff's speech concerned matters beyond her officials duties and was made to individuals who were not her supervisors, the claims are not subject to summary adjudication under the holding of Garcetti. Rather, the determination of the scope of Plaintiff's official duties, and whether her speech was made pursuant to, or outside of, these duties, must await a different day. Because it is possible that Plaintiff could prove that some of her speech was beyond the scope of her professional duties (and thus protected by the First Amendment) and that Defendants retaliated against her because of *that* speech, she states a viable First Amendment retaliation claim in the proposed Second Amended Complaint. See Skehan v. Village of Mamaroneck, 465 F.3d 96, 106 (2d Cir. 2006). Amendment would not futile because the claims would survive a Rule 12(b)(6) challenge. Accordingly, Defendants' motion to dismiss is denied and Plaintiff's cross-motion to amend is granted.

**b.  Qualified Immunity**

The individual defendants also contend that they are entitled to qualified immunity on any claims brought under Section 1983.  In this regard, Defendants argue that in light of the Supreme Court's recent decision in Garcetti, "it was objectively reasonable for defendants to believe that plaintiff's speech was so intertwined with her duties as a Program Associate that it was not made as a 'citizen' and that the First Amendment therefore did not preclude defendants from dismissing her." Def. Mem. L. p. 5.   The argument is unpersuasive.

> "The qualified immunity doctrine shields 'government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " [Lewis v. Cowen, 165 F.3d 154, 166 (2d Cir. 1999)] (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken." Id. (citing Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L. Ed.2d 523 (1987)).  In the case of a § 1983 First Amendment retaliation claim such as this one, "[t]he relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract, to 'freedom of speech,' " but whether the defendants should have known that the specific actions complained of violated the plaintiff's freedom of speech. . . .  Id.

Barclay v. Michalsky, 451 F. Supp. 2d 386, 399-400 (D. Conn. 2006).

At the time of the employment action in issue in this case,

it was clearly established that while "a governmental entity enjoys significantly greater latitude when it acts in its capacity as employer ..., the First Amendment nonetheless prohibits it from punishing its employees in retaliation for the content of their speech on matters of public importance." Munafo v. Metro. Transp. Auth., 285 F.3d at 211 (citing Waters v. Churchill, 511 U.S. 661, 668, 671-75 (1994); Rankin v. McPherson, 483 U.S. 378, 383-84 (1987); Connick v. Myers, 461 U.S. at 142; & Pickering v. Board of

17

> Education, 391 U.S. at 568); see also Skehan v. Village of Mamaroneck, 465 F.3d at 107-08. An "employee's right to be free from such retaliation has been clearly established since at least 1968." Munafo v. Metro. Transp. Auth., 285 F.3d at 211.

Jackson v. Jimino, 2007 WL 189311, at *17 (N.D.N.Y. Jan. 19, 2007). It is possible that Plaintiff could establish facts demonstrating that each individual defendant took action that "'violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known,'" Lewis, 165 F.3d at 166, by discharging Plaintiff because she spoke on matters of public concern.

Further, for the reasons indicated above, the nature and scope of Plaintiff's official duties cannot be ascertained from the face of the pleadings. Accepting the allegations in the proposed Second Amended Complaint as true, see McKenna v. Wright, 386 F.3d 432, 436 (2d. Cir 2004),[15] it is possible that Plaintiff could establish that the individuals defendants knew that Plaintiff was speaking on matters of public concern beyond the scope of her official duties and discharged her nonetheless. Thus, the motion for qualified immunity must be denied as premature. See Walker v. Mendoza, 2000 WL 915070, at *7 (E.D.N.Y. June 27, 2000)("It is generally premature to address the defense of qualified immunity in a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).").

---

[15] As the Second Circuit has noted:

> a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route. Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense.

McKenna v. Wright, 386 F.3d 432, 436 (2d. Cir 2004)(citations and quotation marks omitted).

**IV. CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss the action pursuant to Rule 12(b)(6) [dkt. # 35] is **DENIED**. Plaintiff's cross-motion for leave to file and serve a Second Amended Complaint [dkt. # 38] is **GRANTED**. Plaintiff shall file and serve the Second Amended Complaint within ten (10) days of the date of this Decision and Order.

**IT IS SO ORDERED.**

DATED:   February 28, 2007

_____
Thomas J. McAvoy
Senior, U.S. District Judge