UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SUSAN F. MCLAUGHLIN,

                                  Plaintiff,

      v.                                                            06-CV-0376

PETER F. PEZZOLLA, in his individual capacity,
JOSEPH J. COLARUSSO, in his individual capacity,
RITA M. MARTIN, in her individual capacity,
ANTONIA J. FERGUSON, in her individual capacity,
ANN T. NEHRBAUER, in her individual capacity,
VICTOR M. TURNER, in his individual capacity,
KATHLEEN BRODERICK, in her individual capacity,
the STATE OF NEW YORK OFFICE OF MENTAL
RETARDATION AND DEVELOPMENTAL
DISABILITIES, the WILLOWBROOK CONSUMER
ADVISORY BOARD and LAURA MCGRATH,,

                                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff Susan McLaughlin brought this civil rights action alleging that: (1) Defendants, past and present employees of the New York State Office of Mental Retardation and Developmental Disabilities (OMRDD), OMRDD itself, past and present employees of the Willowbrook Consumer Advisory Board (CAB), and CAB itself, retaliated against her for her protected speech in violation of the First Amendment of the United States Constitution. See Docket No. 14. On December 17, 2009, the Court ruled on Defendants' summary judgment motions dismissing Plaintiff's claims against the OMRDD, and individual Defendants

McGrath, Pezzolla, Martin, and Colarusso, and denying Defendants' motion as to the CAB, and individual Defendants Broderick, Ferguson, Nehrbauer, and Turner. See Docket No. 108. On February 1, 2010, Defendant Broderick filed the instant motion for reconsideration. Defendants Ferguson, Nehrbauer, Turner and the CAB join the instant motion. See Docket No. 110.

In their motion for reconsideration, Defendants argue that the Court should grant summary judgment as to all Defendants. Id. They contend that the analysis and reasoning of the Second Circuit in Weintraub v. Board of Education of the City School District of New York, 2010 WL 262663 (2d Cir. 2010), when applied to the facts of this case, compel a finding that Plaintiff's alleged protected speech was made in furtherance of her core duties as a CAB representative and as such, was unprotected. Id. For the reasons that follow, Petitioner's motion is denied.

## I.  FACTS

Although the Court assumes familiarity with the facts of this case from the Court's recent Decision and Order, the Court will state the pertinent facts and events. See Docket No. 108. "Plaintiff was employed by CAB as a consumer advocate." Id. As a consumer advocate, her "job duties and responsibilities included, but were not limited to, conducting visits to OMRDD facilities, attending meetings of the OMRDD team charged with her consumer's care, planning for her consumer's care, interacting with service providers to assure that appropriate care is given, and granting or withholding consent for her consumers' medical care." Id. In Plaintiff's Complaint she alleged that in addition to managing her

caseload, she began reporting what she believed were systemic problems related to the treatment of all individuals served by the Sunmount DDSO, an OMRDD operated facility. Id.

At issue in this case are two letters dated February 20, 2004 and February 17, 2005. Id. Both letters were written on Plaintiff's personal letterhead during non-working hours. Id. The letters reported abusive and neglectful acts, systemic cover-up, and Medicaid fraud extending beyond the members of the Willowbrook class and involving both her consumers and consumers not within her specific caseload. Id. Plaintiff's Complaint alleges that instead of conducting investigations of the systemic problems reported in her letters, Defendants retaliated against her by engaging in investigations of her work performance, conducting a OMRDD and CAB joint investigation of her, and finally interrogating and terminating her in 2005. Id.

In the December 17, 2009 Decision and Order, the Court ruled on Defendants' summary judgment motions, dismissing Plaintiff's claims against the OMRDD, and individual Defendants McGrath, Pezzolla, Martin, and Colarusso, and denying Defendants' motion as to the CAB, and individual Defendants Broderick, Ferguson, Nehrbauer, and Turner. Defendant Broderick filed the instant motion for reconsideration joined by Defendants Ferguson, Nehrbauer, Turner and the CAB.

## II.     STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 60(b) the Court may relieve a party from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . misrepresentation, or other

misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

"'A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances.'" Marrero Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004) (quoting United States v. International Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001)). "The burden is on the party seeking relief from judgment." Id. "As a Rule 60(b) motion, [Petitioner's] motion [is] to be determined within the discretion of the District Court." United States v. Clark, 984 F.2d 31 (2d Cir. 1993).

### III.   DISCUSSION

Defendants argue that the Court should reconsider its earlier decision denying summary judgment as to Plaintiff's First Amendment retaliation claim. See Docket No. 110. They contend that the Second Circuit Court of Appeals decision in Weintraub v. Board of Education of the City School District of the City of New York, 2010 WL 262663 (2d Cir. 2010), represents a dramatic change in the controlling law narrowing the scope of protection afforded to an employee as defined in Garcetti v. Ceballos, 547 U.S. 410 (2006), and altering the basis of analysis utilized by this Court. Id. Additionally, Defendants argue that the Court applied the wrong standard to the inquiry of qualified immunity, wrongfully denying qualified immunity to the individual Defendants. Id.

a.   **Whether Plaintiff Spoke as a Citizen or as a Government Employee**

In Garcetti v. Ceballos, 547 U.S. 410, 426 (2006), the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employee discipline." The decision to deny Defendant's Motion for Summary Judgment as to Plaintiff's First Amendment retaliation claim was based partly on the finding that "because Plaintiff's letters were written to individuals outside of Plaintiff's regular chain of command and parts of the letters concerned subjects outside of Plaintiff's job description there are material questions of fact concerning whether Plaintiff's letters were written pursuant to her official duties." See Docket No. 108. Defendants argue that the Second Circuit Court of Appeals decision in Weintraub, narrowed the scope of protection afforded to an employee as defined by Garcetti, requiring the Court to reconsider its decision. See Docket No. 110.

In Weintraub, the Second Circuit Court of Appeals found that "speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." 2010 WL 262663, at *6. The Court explained that "activities undertaken in the course of performing one's job are activities pursuant to official duties." Id. at *5. In that case, the Circuit Court held that a grievance filed by a teacher about student disciplinary proceedings was filed pursuant to his official duties "because it was part and parcel of his concerns about his ability to properly execute his duties as a public school teacher-namely, to maintain classroom discipline, which is an indispensable prerequisite to effective teaching and classroom learning." Id. at *6. The teacher complained about the Board of Education's refusal to discipline a student for throwing a book at him in his classroom. Id. at *1. The

Court held its decision was "supported by the fact that [the teacher's] speech ultimately took the form of an employee grievance, for which there is no relevant citizen analogue." Id. at *6. The Court pointed out that "[r]ather than voicing his grievance through channels available to citizens, generally, Weintraub made an internal communication made pursuant to an existing dispute resolution policy established by the Board of Education." Id. at *7.

In the instant case, unlike the complaint in Weintraub which referred to incidents in the teacher's own classroom, Plaintiff's letters referred to systemic corruption extending outside of her own personal caseload and affecting patients with whom she had no personal or job connection.  Furthermore, Plaintiff's complaint took the form of personal letters to persons outside of her chain of command.  These letters were not part of an established internal communication method and could have been written by any member of the public at large.  Because of the factual distinctions between the speech at issue in Weintraub and the instant case, the Court is not persuaded that Plaintiff's complaints were "part and parcel" with her duties as a CAB advocate and, therefore, retain the possibility of constitutional protection.  Accordingly, the motion for reconsideration is denied on this ground.

**b.     Whether Defendants are entitled to Qualified Immunity**

Defendants argue that the Court applied the wrong standard when analyzing whether Defendants were entitled to qualified immunity. See Docket No. 110.  They argue that "[r]ather than . . . focus on the date on which the case was decided, the Court should have analyzed the fluid state of the law that could lead a reasonable person to believe that the speech was not protected." Id. Defendants argue that the evolving standard defined in the Garcetti and Weintraub decisions demonstrate that the area of law is in flux and, therefore, Defendants could have believed that the letters were not protected speech. Id.;

see Garcetti, 547 U.S. 410; Weintraub, 2010 WL 262663. Defendants argue that because the law was not defined with reasonable clarity Defendants should be granted qualified immunity. See Docket No. 110.

The Court is not persuaded by Defendants' argument. The "clearly established" element of the qualified immunity defense is judged from the perspective of the law "at the time of the conduct at issue." Davis v. Scherer, 468 U.S. 183, 197, 104 S. Ct. 3012, 82 L. Ed.2d 139 (1984); see also Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003)(To determine whether a right is clearly established, a court must assess whether: "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful.")(emphasis added, internal citations omitted); Lewis v. Cowen, 165 F.3d 154, 166 (2d Cir.1999)("Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken.")(emphasis added)(citing Anderson v. Creighton, 483 U.S. 635, 639, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987)).

The alleged retaliatory conduct in this case - Plaintiff's discharge - occurred in 2005. At the time, the law was clearly established that "[a] public employee claiming First Amendment retaliation must demonstrate that: '(1) [her] speech addressed a matter of public concern, (2) [she] suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, 'so that it can be said that his speech was a motivating factor in the determination.'" Feingold v. New York, 366 F.3d 138, 160 (2d Cir. 2004)(quoting Mandell v. County of Suffolk, 316 F.3d 368, 382 (2d Cir.

2003)).  Once this three-pronged test was satisfied, the extent to which a public employee could be disciplined for her speech was "determined by balancing the interest of the employee, in [her] role as a citizen, in commenting on matters of public concern against the interest of the government, in its role as an employer, in promoting the efficiency of the services it performs through its employees." Mandell, 316 F.3d at 382; see Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)("Pickering and the cases decided in its wake identify two inquiries to guide interpretation of the constitutional protections accorded to public employee speech. The first requires determining whether the employee spoke as a citizen on a matter of public concern. . . . If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.")(citing Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty., 391 U.S. 563, 568 (1968)).  Although the question of whether the employee spoke "as a citizen" was in the jurisprudential mix, the focus was decidedly on the content of the speech and its impact on the employer.

  Plaintiff complaints, like those of the plaintiff in Feingold, were about the employer's public function performance, and, because the complaints were made internally through the ORMDD,  there is little (if any) support for the proposition that the speech was disruptive to the employer's public function. See Feingold, 366 F.3d at 160, n. 21.  Thus, applying the First Amendment jurisprudence of the day, it would have been clearly established to a reasonable official in Defendants' positions that it would violate Plaintiff's First Amendment rights to terminated her solely for the content of the complaints.  See id. at 160 ("While Feingold's alleged complaints were based on his personal experience, they also suggest that

the fairness and impartiality of the [Manhattan North Office (the "MNO") of the Traffic Violations Bureau where Feingold worked] may have been compromised, and that the MNO suffered from delay due to the failure of other ALJs to work full days. These issues are clearly matters of public concern. Accordingly, Feingold may proceed on his First Amendment claim.").

The subsequently decided cases of Garcetti and Weintraub, which address whether speech was made as "a citizen" or "an employee" for First Amendment purposes, and which defendants correctly argue narrowed the scope of a public employee's First Amendment protection, does not alter the determination as to whether a reasonable official, in Defendants' positions in 2005, could have believed that his or her actions were lawful in light of the then-existing clearly established law.  As the Second Circuit has held, the "question [of whether a right is clearly established] is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." McCullough v. Wyandanch Union Free School Dist.., 187 F.3d 272, 278 (2d Cir. 1999).

Based on the then-existing state of the law, and the questions of fact as to the reason and motivation for Plaintiff's discharge, the Court finds that Defendants are not entitled to qualified immunity at this time.  Therefore, the motion for reconsideration on this ground is denied.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' motion for reconsideration of this Court's Decision and Order denying summary judgment is DENIED.

Dared:March 4, 2010

Thomas J. McAvoy
Senior, U.S. District Judge